**OPINION**



FILED

Aug 16 2016, 8:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Jill A. Gonzalez<br>Public Defender's Office<br>Muncie, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Brian Reitz<br>Deputy Attorney General<br>Indianapolis, Indiana |

I N   T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Harry L. Lacy,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 16, 2016<br><br>Court of Appeals Case No.<br>18A04-1510-CR-1757<br><br>Appeal from the Delaware Circuit Court<br><br>The Honorable Thomas A. Cannon, Jr., Judge<br><br>Trial Court Cause No.<br>18C05-1502-F6-52 |

**May, Judge.**

[1]     Harry L. Lacy appeals his conviction of Level 6 felony identity deception[1] arguing the trial court abused its discretion by declining to give his tendered

---

[1] Ind. Code § 35-43-5-3.5 (2014).

jury instructions.  He also claims the prosecutor committed misconduct by arguing Lacy had the burden to prove an affirmative defense.  We affirm.

# Facts and Procedural History

[2] On January 31, 2015, Lacy entered the Delaware County Jail to visit his wife, Cassandra Collins, who was an inmate.  Collins' lawyer was Mark McKinney.  Lawyers have unsupervised private contact with clients who are inmates at the jail, while visiting family and friends are required to be separated from inmates by glass and speak to them through a phone.

[3] Lacy signed in as "Mark McKinney" and claimed to be Collins' lawyer.  (Tr. at 75.)  Identifying himself as McKinney, he said he needed to see his client and gave the corrections officer a business card that read "Mark McKinney, Attorney at law."  (*Id*. at 74.)  Lacy went through three security doors and sat down in a meeting room with Collins before an officer who knew Lacy was not a lawyer, recognized him.  Lacy continued to insist he was Collins' lawyer as he was escorted out of the jail.  McKinney was not at the jail on January 31, and he did not give Lacy permission to use his identifying information.

[4] The State charged Lacy with Level 6 felony identity deception.  The trial court gave the pattern jury instruction outlining the offense over Lacy's objection.  Lacy tendered two other instructions that the trial court rejected.  A jury found Lacy guilty as charged.

# Discussion and Decision

## *Jury Instructions*

[5]     Instructing a jury is left to the sound discretion of the trial court and is reviewed only for an abuse of discretion. *Hayes v. State*, 15 N.E.3d 82, 84 (Ind. Ct. App. 2014), *trans. denied.* On review of a decision not to give a proposed jury instruction, we consider whether the instruction (1) correctly states the law, (2) is supported by the evidence, and (3) is covered in substance by other instructions that are given. *Simmons v. State*, 999 N.E.2d 1005, 1011 (Ind. Ct. App. 2013), *reh'g denied, trans. denied.* We consider jury instructions as a whole and in reference to each other and do not reverse unless the instructions as a whole mislead the jury as to the law in the case. *Id.*

[6]     The preferred practice is to use the pattern jury instructions. *Gravens v. State*, 836 N.E.2d 490, 493 (Ind. Ct. App. 2005) (quoting *Cochrane v. Lovett*, 337 N.E.2d 565, 570 n.6 (Ind. Ct. App. 1975)) (noting the pattern instructions "have apparent approval of the Indiana Supreme Court as evidenced by the preferred treatment given such instructions in Indiana Rule of Trial Procedure 51(E)"), *trans. denied.* The pattern instruction for identity deception provides:

> A person who knowingly or intentionally obtains, possesses, transfers or uses the identifying information of another person without the other person's consent and with intent to assume the identity of another person commits identity deception, a Level 6 felony.

Before you may convict Harry L. Lacy of Count 1, Identity Deception, a Level 6 felony, the State must have proven each of the following beyond a reasonable doubt:

1. Harry L. Lacy;

2. Knowingly or intentionally;

3. Obtained, possessed, transferred or used the identifying information of Mark McKinney;

4. Without Mark McKinney's consent;

5. With the intent to assume the identity of Mark McKinney, another person.

(Tr. at 127-28.) Lacy argues that the pattern jury instruction omits a material element required to be proven by the State, *i.e.*, that he "used the identifying information of Mark McKinney for an unlawful purpose." (App. at 69.)

To remedy that omission, Lacy tendered an instruction that replaced pattern instruction element five with the above language, which is from the identity deception statute. The trial court rejected the instruction because the "lawful purpose" language in the identity deception statute is an affirmative defense and not a material element of the crime. (*Id.* at 121-122.) We agree.

Whether the "lawful purpose" language in Ind. Code § 35-43-5-3.5, which defines identity deception, is an affirmative defense or a material element is an issue of first impression. That statute, in pertinent part, provides:

(a) Except as provided in subsection (c), a person who knowingly or intentionally obtains, possesses, transfers, or uses the identifying information of another person, including the identifying information of a person who is deceased:

(1) Without the other person's consent; and
(2) With intent to:
   (A) Harm or defraud another person;
   (B) Assume another person's identity; or
   (C) Profess to be another person;
   commits identity deception, a Level 6 felony.

* * * * *

(c) The conduct prohibited in subsections (a) and (b) does not apply to . . . (3) [a]ny person who uses the identifying information for a lawful purpose.

Ind. Code. § 35-43-5-3.5 (2014).

[9]    In determining whether a statutory exception is a material element of the offense or an affirmative defense, we consider the location of the exception relative to the definition of the principal offense. *Lyles v. State*, 970 N.E.2d 140, 143 n.3 (Ind. 2012). If the exception is closely connected with the clause creating the offense, it is a material element and must be proven by the State every time the crime is charged. *Id.* However, if the exception is positioned in a subsequent clause or statute, the exception is an affirmative defense that must be raised by the defendant. *Id.* Defendants have the initial burden to establish an affirmative defense by a preponderance of the evidence. *Adkins v. State*, 887 N.E.2d 934, 938 (Ind. 2008). However, the State bears the ultimate burden of

negating beyond a reasonable doubt any defense sufficiently raised by the defendant. *Wilson v. State*, 4 N.E.3d 670, 676 (Ind. Ct. App. 2014), *trans. denied*.

[10] Identity deception is defined in subsection (a) of the controlling statute. *See* Ind. Code § 35-43-5-3.5(a). There is no "unlawful purpose" requirement in that subsection. Rather, the "lawful purpose" exception appears in subsection (c). *See* Ind. Code § 35-43-5-3.5(c)(3). That subsequent clause also creates two age-based exceptions to the definition of identity deception in subsection (a). *See* Ind. Code § 35-43-5-3.5(c). The "lawful purpose" exception appearing in a subsequent clause with age-based exceptions suggests the legislature intended it to be an affirmative defense and not a material element of identity deception.[2] *See, e.g.*, *Wilson*, 4 N.E.3d at 676-77 (lack of knowledge of victim's age considered an affirmative defense in sexual misconduct with a minor statute because there is no knowledge requirement in the clause creating the offense and the knowledge exception appears in a clause subsequent thereto), *trans. denied*.

[11] Our determination that the "lawful purpose" language is an affirmative defense is also consistent with our Indiana Supreme Court's interpretation of similar language in the past regarding conduct that may or may not be unlawful.

---

[2] The "lawful purpose" exception can be an affirmative defense even though the legislature did not explicitly denominate it as such. *See Neese v. State*, 994 N.E.2d 336, 340 (Ind. Ct. App. 2013) (statutory exception to check deception appearing in a clause subsequent to definition of principal offense is properly considered an affirmative defense despite not being specifically designated as such in the statute).

> The same general question has been raised many times in criminal prosecutions where the alleged crime is the doing of a thing or the possessing of a thing which under certain circumstances may be lawful, but which is alleged in the particular case to be unlawful. . . . When an offense is created by statute and the same or other statutes make exceptions thereto it is not necessary for the state to negate the exceptions by stating and proving that the defendant does not come within the same. It is, therefore, not incumbent upon the state in a prosecution for the unlawful possession of narcotics to prove all possible exceptions or to by affirmative evidence negate every conceivable hypothesis by which the appellant might have gained his possession lawfully.

*Stanley v. State*, 252 Ind. 37, 41, 245 N.E.2d 149, 151 (1969) (citing *Day v. State*, 251 Ind. 399, 402, 241 N.E.2d 357, 359 (1968)). The State is not required to negate every conceivable hypothesis for how Lacy may have used McKinney's identifying information lawfully.

[12] Because the "lawful purpose" exception is an affirmative defense and not a material element of identity deception, Lacy's tendered instruction incorrectly stated the law by including an affirmative defense as a material element of the offense. As such, the trial court did not abuse its discretion by rejecting this tendered instruction. *See Nichols v. State*, 542 N.E.2d 572, 575 (Ind. Ct. App. 1989) (tendered instructions that contain incorrect statements of the law are properly refused).

[13] Lacy's other proposed instruction was offered to supplement the trial court's instruction and stated only the "lawful purpose" affirmative defense contained in subsection (c)(3) of the identity deception statute. That instruction provided:

"The conduct prohibited by the crime of identity deception does not apply to any person who uses the identifying information for a lawful purpose." (App. at 68.) Although a correct statement of law, the trial court properly rejected this instruction on another basis.

[14] This tendered instruction defined an affirmative defense. Lacy bears the initial burden to establish that affirmative defense by a preponderance of the evidence.[3] *See Adkins*, 887 N.E.2d at 938 (defendants have initial burden to establish affirmative defense). If he did not adequately raise the defense at trial, then he was not entitled to the instruction. *See Simmons*, 999 N.E.2d at 1011 (tendered instructions must be supported by the evidence).

[15] Lacy never testified or offered evidence to support the premise that he used McKinney's identifying information for a lawful purpose. Nor does any evidence presented by the State at trial suggest Lacy used the information for a lawful purpose. Thus, the trial court did not abuse its discretion by declining to give this tendered instruction because it was not supported by the record. *See Clemens v. State*, 610 N.E.2d 236, 241 (Ind. 1993) (tendered instruction on affirmative defense of accident properly refused where appellant never testified,

---

[3] In his brief, Lacy does not assert he met his initial burden to support giving the affirmative defense instruction. Nor does he provide the legal standard by which we determine whether that burden was met. Lacy therefore waived this issue on appeal because he did not make a cogent argument supported by legal authority. *See Hollowell v. State*, 707 N.E.2d 1014, 1025 (Ind. Ct. App. 1999) (failure to present cogent argument waives that issue for appellate review). Despite the waiver, to the extent we can, we choose to address this issue on the merits.

offered no evidence in his defense, and all medical evidence concluded death was no accident), *reh'g denied*.

### *Prosecutorial Misconduct*

[16] Lacy asserts the State committed prosecutorial misconduct by arguing Lacy had the burden to prove an affirmative defense.[4] In reviewing a claim of prosecutorial misconduct we determine whether misconduct occurred, and, if so, whether the misconduct placed the defendant in a position of grave peril to which he or she would not have been subjected otherwise. *Jerden v. State*, 37 N.E.3d 494, 498 (Ind. Ct. App. 2015). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.* To preserve a claim of prosecutorial misconduct, the defendant must request the jury be admonished at the time the alleged misconduct occurs, and if further relief is needed, move for a mistrial. *Id.* Failure to do so results in waiver. *Id.* Where a prosecutorial misconduct claim has been waived for failure to preserve, the defendant must establish not only the grounds for misconduct but also that the misconduct resulted in fundamental error, an extremely narrow exception. *Id.*

---

[4] Lacy also waived the misconduct issue on appeal because he did not make a cogent argument supported by legal authority. *See Hollowell*, 707 N.E.2d at 1025 (failure to present cogent argument waives that issue for appellate review). Lacy mentions misconduct in the final paragraph of his Argument, but does not explain the standard by which we determine whether misconduct occurred. Nevertheless, to the extent we can, we address his assertion on the merits.

[17] Lacy did not request an admonition or move for mistrial, so he has waived his prosecutorial misconduct argument on review. Waiver notwithstanding, Lacy's argument fails. Lacy claims: "When the prosecutor tells the jury that the defendant has to prove his innocence, he is going farther than just misstating the law . . . [It] is prosecutorial misconduct." (Appellant's Br. at 11.) This assertion finds no support in the record. Nothing in the record demonstrates the prosecutor told the jury Lacy had the burden to prove his innocence or to prove an affirmative defense. All discussion of affirmative defenses occurred outside the presence of the jury.

[18] Lacy seems to argue that because the prosecutor did not include the "lawful purpose" language as an element of identity deception, he was essentially telling the jury Lacy had the burden to prove his innocence on that element and that was misconduct. This argument fails for the same reason his instructional-error claim fails -- the "lawful purpose" language is not a material element of the offense, and as such, the prosecutor had no duty to prove it. We cannot say the prosecutor committed misconduct by correctly stating the law. *See Deaton v. State*, 999 N.E.2d 452, 456 (Ind. Ct. App. 2013) (holding prosecutor's correct statement of law during closing argument that victim's uncorroborated testimony was sufficient to support a conviction was not misconduct), *trans. denied*.

# Conclusion

Because Lacy's tendered instructions either incorrectly stated the law or were not supported by the record, the trial court did not abuse its discretion by declining them, and the prosecutor did not commit misconduct by discussing the elements as outlined in the court's instructions. Accordingly, we affirm.

Affirmed.

Baker, J., and Brown, J., concur.