Najam, Judge,
dissenting.
I respectfully dissent. Tyms-Bey’s alleged RFRA defense may ultimately not succeed, but he is entitled to his day in court. The majority’s holding that, in effect, Tyms-Bey has not stated a claim under RFRA and that he is not even entitled to present evidence in support of his alleged defense is too quick to dispose of Tyms-Bey’s claim and denies him the par-tieularized adjudication that is expressly afforded to him by Indiana’s RFRA. Moreover, in enacting Indiana’s RFRA, our legislature explicitly reserved to itself, and withheld from our judiciary, the right to declare categorical exemptions from RFRA’s application. The majority’s holding disregards that command and categorically removes tax-based actions from RFRA’s application. The majority’s analysis further misunderstands the least restrictive means test under RFRA and denies Tyms-Bey his right under Article 1, Section 19 of the Indiana Constitution. And the majority’s selective use of federal authority fails to consider federal cases in which religious exemptions from facially neutral tax laws have been permitted, and, in any event, the authority relied on by the majority is readily distinguishable.

Overview

Indiana’s RFRA represents a new paradigm in Indiana law concerning exercise-of-religion claims and defenses. Federal and state legislatures have enacted RFRA laws following the United States Supreme Court’s decision in Employment Division v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In Smith, the Court held that the Free Exercise Clause of the First Amendment “does not require judges to engage in a case-by-case assessment of the religious burdens imposed by facially constitutional laws.” Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 424, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006) (discussing Smith, 494 U.S. at 883-90, 110 S.Ct. 1595). By rejecting Smith and enacting Indiana’s RFRA, the General Assembly now requires claims of religious exemptions from laws of general applicability to be deter *493 mined on a case-by-case basis using a strict scrutiny analysis. Ind. Code § 34-13-9-8 (2016).
But, contrary to the majority’s assessment, Indiana’s new religious-freedom paradigm goes further than merely reinstating pr e-Smith free exercise cases. As with its identically worded federal counterpart, by its plain terms Indiana’s RFRA is “an obvious effort” by the General Assembly “to effect a complete separation from First Amendment case law.” Burwell v. Hobby Lobby Stores, Inc., — U.S. —, 134 S.Ct. 2751, 2761-62, 189 L.Ed.2d 675 (2014). For example, Indiana’s RFRA, like the federal version, defines “exercise of religion” more broadly than First Amendment case law defines it, and our RFRA also provides a broader definition of the “person[s]” who may bring RFRA claims or defenses than does either First Amendment case law or the federal RFRA. See id. at 2772, 2775; see also I.C. § 34-13-9-5 (defining “exercise ofireligion”); I.C. § 34-13-9-7 (defining “person”).
And there is good reason for the General Assembly to have sought that complete separation. It is widely recognized that the “least restrictive means requirement” under RFRA “was not used in the pr e-Smith jurisprudence.” City of Boerne v. Flores, 521 U.S. 507, 535, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). Rather, the pr e-Smith case law, in which the Supreme Court routinely sided with the government,[5] “indicates that [the Court] was not applying a genuine ‘compelling’ interest test.” James E. Ryan, Smith and the Religious Freedom Restoration Act: An Iconoclastic Assessment, 78 Va. L. Rev. 1407, 1413-15 (1992) (specifically identifying United States v. Lee as one such decision); see also United States v. Lee, 455 U.S. 252, 262, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) (Stevens, J., concurring in judgment) (concluding that the government’s argument in Lee did not pass strict scrutiny and that the majority’s opinion was better understood using the test the Court later adopted in Smith).[6] Thus, RFRA is unmistakably “broader” than that case law. City of Boerne, 521 U.S. at 535, 117 S.Ct. 2157. The Court’s decision in Smith was simply the last straw, which caused legislatures throughout the nation to enact statutory protections for claimants of religious exemptions.
Rather than following Burwell, the majority instead concludes that Lee, a pre-Smith case, and its progeny more accurately reflect our legislature’s intent when it enacted RFRA. I cannot agree and must conclude that the majority’s assessment that Indiana’s RFRA adds nothing to pre-Smith jurisprudence is contrary to RFRA. As the Burwell Court recognized, Lee is “a free exercise, not a RFRA, case.” Burwell, 134 S.Ct. at 2784. Indeed, the Burwell Court expressly concluded that the reasoning in Lee is “squarely inconsistent with the plain meaning of RFRA.” Id. at 2784 n.43 (discussing Lee, 455 U.S. at 261, 102 5.Ct. 1051). Our legislature enacted RFRA less than nine months after the Court’s opinion in Burwell, which was the impetus for our legislature’s decision. Moreover, Indiana’s RFRA contains the exact same language that the Court, in Burwell, considering the federal RFRA, held to provide broader protection to the exercise of reli *494 gion than Lee and its progeny, and Indiana’s RFRA expressly codifies and expands upon the holding in Burwell.[7] See I.C. §§ 34-13-9-5, -7.
Accordingly, I would hold that Bur-well, not Lee, best reflects the intent of our legislature in enacting RFRA. And this is significant here because, as Burwell explains, RFRA demands a fact-sensitive, “particularized” assessment of the claimed religious exemption, while Lee does not. Burwell, 134 S.Ct. at 2779-80, 2783-85.
With that background in mind, I turn to five reasons for my disagreement with the majority on the limited facts of this case.

1. Indiana Code Sections 34-13-9-1 and -2

First, by its plain terms Indiana’s RFRA expressly permits all litigants in Indiana in any cause of action, other than actions based on certain claims of discrimination or claims against private employers, to assert their exercise of religion as a claim or defense against compliance with a statutory mandate. I.C. §§ 34-13-9-0.7 to - 2, -11. Specifically, Indiana Code Section 34-13-9-1 unambiguously states that RFRA “applies to all ... statutes,” and Section 34-13-9-2 just as clearly states that “[a] .,. statute ... may not be construed to be exempt from the application of this chapter unless a state statute expressly exempts the statute.... ” (Emphasis added.)
In other words, the General Assembly expressly reserved to itself the right to exempt statutes from RFRA’s application and expressly commanded the judiciary to not “construct ]” statutes “to be exempt from th[at] application.” Id. Those commands are consistent with the case-by- *495 case, particularized adjudications the Bur-well Court described as fundamental to RFRA. See 134 S.Ct. at 2779-80. And there is no state statute that expressly exempts tax evasion-prosecutions from the application of RFRA.
Nonetheless, the majority construes tax evasion prosecutions as exempt from RFRA defenses and, in doing so, contravenes those express instructions. See I.C. § 34-13-9-2. As the Indiana Supreme Court has made clear, to discern our legislature’s intent “we look first to the statutory language and give effect to the plain and ordinary meaning of statutory terms. Where the language is clear and unambiguous, there is no room for judicial construction.” Jackson v. State, 50 N.E.3d 767, 772 (Ind. 2016) (citations and quotation marks omitted). Indiana Code Sections 34-13-9-1 and -2 leave no room to look elsewhere for interpretive authority. The General Assembly has unambiguously declared that the judiciary is not to exempt RFRA claims and defenses from any action and that such exemptions lie solely within the prerogative of the General Assembly. If we disregard that plain language, “the General Assembly might fairly ask if we’re listening.” Dye v. State, 972 N.E.2d 853, 862 (Ind. 2012) (Massa, J., dissenting). As a matter of law under RFRA, Tyms-Bey is entitled to present facts in support of his alleged RFRA defense to the State’s criminal charges against him, and the trial court erred when it preemptively struck his alleged defense.

2. Least Restrictive Means Test

Second, the majority’s analysis misunderstands the least restrictive means test as used in RFRA and instead erroneously applies the more permissive standards from pre-Smith case law. See City of Boerne, 521 U.S. at 535, 117 S.Ct. 2157; Ryan, supra, 78 Va. L. Rev. at 1413-15. As explained by the Court in Burwell, the least restrictive means test under RFRA is “exceptionally demanding” and requires the State to show that “it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].... ” 134 S.Ct. at 2780. This test requires the State to demonstrate that the “application of the burden to the person” is the least restrictive means of furthering the State’s compelling interest. I.C. § 34-13-9-8(b) (emphasis added); see Burwell, 134 S.Ct. at 2780 (quoting 42 U.S.C. § 2000bb-l(a), (b)). And considering “the burden to the person” requires a “focused inquiry” that “look[s] beyond broadly formulated interests and ... scrutinize[s] the asserted harm of granting specific exemptions to particular religious claimants.... ” Burwell, 134 S.Ct. at 2779 (quotation marks and brackets omitted).
Here, the absence of facts from either Tyms-Bey or the State is 'fatal to the majority’s argument.[8] Rather than rely on any specific facts, the majority instead relies exclusively on Lee and its progeny, which concluded under the Free Exercise Clause that the government’s need in uniform and mandatory participation in the tax scheme necessarily overcomes any individualized concerns. Lee, 455 U.S. at 258-61, 102 S.Ct. 1051. But this is not a free exercise case.
*496 Rather, under RFRA, the State cannot rely on such “broadly formulated interests” but instead must demonstrate how granting Tyms-Bey his asserted exemption would prevent the State from “achieving its desired goal.” See Burwell, 134 S.Ct. at 2779-80. And without a factual basis in the record for Tyms-Bey’s asserted exemption, the State cannot satisfy that test. Indeed, religious exemptions already exist in the tax code. If Tyms-Bey’s RFRA defense is that he was wrongly denied such exemptions, the State would be hard pressed under the least restrictive means test to demonstrate how granting him an already established exemption would prevent the State from achieving its goals. See, e.g., Lee, 455 U.S. at 262, 102 S.Ct. 1051 (Stevens, J., concurring in judgment) (“As a matter of administration it would be a relatively simple matter to extend” existing religion-based tax exemptions “to the taxes involved in this case”); see also Burwell, 134 S.Ct. at 2780-82 (holding under the federal RFRA that a government-established exception for religious nonprofit businesses would “serve[ the government’s] stated interests equally well” if extended to some religious for-profit businesses). Accordingly, I cannot say, as a matter of law, that the State has met the “exceptionally demanding” and “particularized” strict scrutiny analysis required under RFRA,[9] See Burwell, 134 S.Ct. at 2779-80.

3. Article 1, Section 19

Third, the majority’s preemptive strike of Tyms-Bey’s RFRA defense denies him his right under Article 1, Section 19 to a jury trial on an affirmative defense. Although RFRA generally presents a question of law, see I.C. § 34-13-9-10,[10] in criminal cases, such as here, Article 1, Section 19 of the Indiana Constitution requires that a defendant who asserts RFRA as an affirmative defense and has not waived his jury trial right be permitted to present evidence of that defense to a jury.
As we have explained:
The constitution is emphatic that the right of the jury to determine the law as *497 well as the facts applies “[i]n all criminal cases whatever.” Ind. Const, art. 1, § 19 (emphasis added). “All” is defined as “the whole extent or duration of ... each and every one of.” Webster’s Third New International Dictionary 54 (1976). “Whatever” is defined as “no matter what ... of any kind at all.” Id. at 2600. We believe that the terms “all” and “whatever” mean what they say. In interpreting the Indiana Constitution, our analysis is controlled by the text itself. Price v. State, 622 N.E.2d 954, 957 (Ind. 1993). Article 1, Section 19 does not speak of verdicts but of “criminal cases,”
Seay v. State, 673 N.E.2d 475, 480 (Ind. Ct. App. 1996), adopted, 698 N.E.2d 732, 733 (Ind. 1998). The General Assembly, having expressly permitted RFRA to be raised as an affirmative defense in criminal actions, cannot then deny the right to submit that defense to a jury under Article 1, Section 19. Id. at 479.
And, despite the State’s argument to the contrary on appeal, there is no serious question whether RFRA is an affirmative defense for criminal defendants. A criminal defendant who asserts RFRA as a defense contends, in effect, that-any evidence the State may present of his alleged criminal conduct is a legal nullity if the defendant demonstrates that the statute imposes a substantial burden on his exercise of religion and the State fails to rebut the defendant’s showing. That is plainly an affirmative defense. See, e.g., Melendez v. State, 511 N.E.2d 454, 457 (Ind. 1987). Further, it is well established that the defendant bears the initial burden of proof at trial to demonstrate his affirmative defense by a preponderance of the evidence. Lacy v. State, 58 N.E.3d 944, 948 (Ind. Ct. App. 2016). The burden then shifts to the State to negate the defense beyond a reasonable doubt. Id.
Indiana Code Section 34-13-9-10 can be harmonized with Article 1, Section 19. Specifically, if a criminal defendant who has asserted RFRA as an affirmative defense to the jury fails to present evidence in the record at trial to support his burden on that defense, the trial court may, in its discretion, decline to give a jury instruction on the defense. E.g., Cavens v. Zaberdac, 849 N.E.2d 526, 533 (Ind. 2006). In this manner, RFRA secures both the trial court’s role as a gatekeeper under Section 34-13-9-10 before the jury and the criminal defendant’s jury trial right under Article 1, Section 19.
Moreover, Tyms-Bey was not required to present evidence in support of his affirmative defense to the trial court in a pretrial hearing on the State’s motion to strike. Tyms-Bey has no more pretrial burden of proof than any other criminal defendant who asserts an affirmative defense, even if a pretrial notice of that affirmative defense is required, which such notice is not required for RFRA defenses.[11] See, e.g., Griffin v. State, 664 N.E.2d 373, 375-76 (Ind. Ct. App. 1996). As a courtesy, Tyms-Bey notified the State that he would assert a RFRA defense at trial before a jury. That was sufficient, and to hold otherwise simply discourages pretrial notices.
The majority has, in effect, declared that Tyms-Bey has failed to.state a claim under RFRA. In so holding, the majority has denied Tyms-Bey his constitutional right, to present evidence of his RFRA affirmative defense to a jury. The trial court should have denied the State’s motion to strike under Indiana Trial Rule 12(F).

*498
4. First Amendment Precedent Demonstrates the Need for a Factual Basis

Fourth, the majority’s reliance on selected federal cases in lieu of the plain text of Indiana’s RFRA and Article 1, Section 19 is misplaced. Indeed, Indiana’s RFRA aside, the United States Supreme Court has repeatedly recognized that some facially neutral tax laws do not withstand strict scrutiny when applied to particular individuals. For example, in Murdock v. Pennsylvania, the Court held that an otherwise nondiscriminatory tax that, as applied, required “religious colporteurs to pay a license tax as a condition to the pursuit of their activities” did not pass strict scrutiny. 319 U.S. 105, 110, 63 S.Ct. 870, 873, 87 L.Ed. 1292 (1943). Likewise, in Follett v. Town of McCormick, the Court held that persons exercising them religion “may be subject to general taxation” but that “does not mean that they can be required to pay a tax for the exercise of that which the First Amendment has made a high constitutional privilege.” 321 U.S. 573, 577-78, 64 S.Ct. 717, 88 L.Ed. 938 (1944).
Similarly, in Sherbert v. Verner[12] the Supreme Court explained as follows:
In Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 [ (1958) ], we ... struck down a condition which limited the availability of a tax exemption to those members of the exempted class who affirmed them loyalty to the state government granting the exemption. While the State was surely under no obligation to afford such an exemption, we held that the imposition of such a condition upon even a gratuitous benefit inevitably deterred or discouraged the exercise of First Amendment rights of expression.... ‘To deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for such speech.’ Id., 357 U.S. at 518, 78 S.Ct. at 1338. Likewise, to condition the availability of benefits upon this appellant’s willingness to violate a cardinal principle of her religious faith effectively penalizes the free exercise of her constitutional liberties.
374 U.S. 398, 405-06, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (emphasis added). In other words, in Sherbert the Supreme Court recognized that the government cannot condition tax benefits on a claimant’s willingness to violate his faith.
Because Tyms-Bey has not yet had the opportunity to present facts in support of his defense under RFRA, we cannot say that his defense is “insufficient” under Indiana Trial Rule 12(F) and must fail as a matter of law. We do not yet know the basis for Tyms-Bey’s claimed exemption. We know the State has alleged a certain sum of unpaid taxes based on allegedly unreported income, allegedly falsely reported rental addresses, and an allegedly falsely claimed credit. But we do not know if, as .in Murdock and Follett, Tyms-Bey’s religious defense to those allegations is aimed particularly at specific provisions of the code as applied to him. Nor do we know if, as in Sherbert and Speiser, he believes that the State has denied him an exemption or benefit based on his willingness to violate a tenet of his faith. Simply, without a factual basis we cannot say that Tyms-Bey has no defense under RFRA.

5. United States v. Lee Is Readily Distinguishable, Even If It Were To Apply

Fifth, and finally, Lee and its progeny, even if they were to apply under Indiana’s RFRA, are not on all fours with *499 Tyms-Bey’s case. Rather, Lee is readily distinguishable from Tyms-Bey’s case because, in Lee, there was a factual basis established for the claimant’s religious objection. In particular, the record in Lee makes clear that the objector, in his role as an employer and business owner, failed to withhold Social Security taxes from his employees’ paychecks and likewise failed to pay the employer’s share of those taxes. He argued that his actions were justified because the entirety of the Social Security system was contrary to his religious beliefs. The Supreme Court rejected that argument as a valid basis for a First Amendment religious exemption. Lee, 455 U.S. at 261, 102 S.Ct. 1051.
But, again, here we have no idea what the factual basis for Tyms-Bey’s RFRA defense may be. And without any evidence we cannot assume the basis for that defense. Accordingly, for that additional reason, the majority’s reliance on Lee is misplaced.

Conclusion

In sum, I respectfully dissent. The majority’s holding that, “as a matter of law, Indiana’s RFRA offers no protection for the allegedly criminal nonpayment of income taxes,” op. at 492, is erroneously premised on Lee rather than Bwrwell and, as a result, undermines the broad and particularized protection our legislature intended RFRA to have. The majority’s analysis is contrary to the plain language of Indiana’s RFRA; it does not properly define or apply the least restrictive means test implemented by RFRA; and it denies Tyms-Bey his jury trial right under Article 1, Section 19. Further, the majority’s reliance on selected federal cases is misplaced. The majority’s selection of authorities does not account for cases in which particularized religious exemptions from facially neutral tax laws have been permitted. Neither is the majority’s reliance on Lee persuasive when, unlike Lee, here there' is no factual basis in the record-for Tyms-Bey’s asserted defense.
The majority’s opinion that there are no facts that Tyms-Bey could offer to support his defense is contrary to RFRA’s mandate and is “a pre-emptive strike on a matter that deserves further record development.” Citizens Action Coalition v. Koch, 51 N.E.3d 236, 243 (Ind. 2016) (Rucker, J., concurring in part and dissenting in part). Without question, the majority is concerned, as were the dissenters in Bunvell, that RFRA will wreck “havoc” on judicial proceedings and be a “radical” departure from the status quo. Burwell, 134 S.Ct. at 2787, 2805 (Ginsburg, J., dissenting). But “[t]he wisdom of [our legislature’s] judgment on this matter is not our concern. Our responsibility is to enforce RFRA as written, and under the standard that RFRA prescribes....” Id. at 2785 (majority opinion). And it is certainly not the judiciary’s role to construe actions as exempt from RFRA when our legislature has expressly reserved that right to itself. See I.C. § 34-13-9-2.
At the end of the day, Tyms-Bey’s exercise-of-religion defense may not prevail. But we cannot say as a matter of law that Tyms-Bey can prove no set of facts in support of his RFRA defense that would entitle him to relief. The issue is not whether a RFRA claimant will ultimately prevail but whether he is entitled to offer evidence to support his claim. In other words, Tyms-Bey is entitled to his day in court and to the same due process as any other criminal defendant, including his right to present his affirmative defense to a jury. Otherwise, RFRA is for naught and offers no more protection to the exercise of religion than does the First Amendment. Accordingly, I would reverse the trial court’s judgment and remand for further proceedings that comply with the unmis *500 takable commands of RFRA, with Article 1, Section 19, and with the same criminal trial procedure we follow when, as here, the defendant asserts an affirmative defense.

. In the seventeen cases between 1963 and 1990 in which the United States Supreme Court considered religious exemptions under the strict scrutiny test, in thirteen the Court sided with the government. James E. Ryan, Smith and the Religious Freedom Restoration Act: An Iconoclastic Assessment, 78 Va. L. Rev. 1407, 1413-14 (1992).

. Indeed, the Smith Court quoted Justice Stevens’ concurring opinion in Lee with approval. Smith, 494 U.S. at 879, 110 S.Ct. 1595.

. Indeed, I agree with the majority and the State’s concession that, by its plain terms, Indiana's RFRA may be raised as a defense to any criminal prosecution, which includes the State’s prosecution of Tyms-Bey for tax evasion. See Appellee’s Br. at 14. In this respect, Indiana’s RFRA is broader than several other states’ RFRA laws, which have numerous, various exemptions from coverage. For example, Florida prohibits its RFRA from being used as a defense to a drug-related criminal allegation. Fla. Slat. Ann. § 761.05(4) (West 2016). Indiana’s RFRA, by comparison, only exempts certain allegations of discrimination and certain claims against private employers from its coverage, I.C. §§ 34-13-9-0.7, -11, and it applies in all other circumstances, see I.C. §§ 34-13-9-1, -2.
The State also notes that "RFRA is not a defense to criminal conduct only and ... can be brought proactively for an actual or likely burden on a person’s religious exercise and to obtain declaratory or injunctive relief to prevent that burden....” Appellee's Br. at 10; see I.C. § 34-13-9-9. Taken in conjunction with its concession that RFRA applies to criminal proceedings, it is clear that the State concedes that Hoosiers need not proactively assert, in a declaratory judgment proceeding or otherwise, their rights to religious exercise to be able to assert those rights as a defense in a criminal proceeding. By comparison, other states with RFRA laws do require certain procedures to be followed before an individual may later raise RFRA as a defense. E.g., Tex. Civ. Prac. & Remedies Code Ann. § 110.006 (West 2015).
Taken together, and especially in light of their more restrictive counterparts in foreign jurisdictions, those provisions evince our legislature’s intent to make RFRA rights broadly available absent explicit direction from the General Assembly otherwise. Indeed, those provisions of Indiana’s RFRA, along with the expansive definition of "person” in Indiana Code Section 34-13-9-7 and the express permission under Indiana Code Section 34-13-9-9 to invoke RFRA in proceedings that involve only private parties, make Indiana’s RFRA more broadly available than the federal RFRA. Again, in Burwell the Court held that Lee was not controlling law under the federal RFRA because the federal RFRA provided greater protection than the pre.-Smith free exercise cases. Burwell, 134 S.Ct. at 2784; see City of Boerne, 521 U.S. at 535, 117 S.Ct. 2157. If the federal RFRA provides greater protection than the pr e-Smith case law, that is only all the more true for Indiana’s RFRA.

. In the State’s probable cause affidavit in support of the tax evasion charges, the State asserted that Tyms-Bey "claimed he is a sovereign citizen,” “declared himself an estate,” and ”den[ied] ... liability of the tax due.” Appellant's App. Vol. II at 16. But there is no evidence that Tyms-Bey intends to rely on those same assertions as the basis for his RFRA defense. Indeed, in its motion to strike Tyms-Bey’s RFRA defense, the State acknowledged that he "has not yet identified what religion he belongs to, how the tenets of that religion relate to Indiana’s income tax regime[,] or how that tax negatively impacts the practice of his religion.” Id. at 36.

. At oral argument, Tyms-Bey’s counsel asserted that the least restrictive means test requires the State to pursue civil enforcement mechanisms before it may enforce tax delinquencies through criminal proceedings. Other jurisdictions have agreed and held that, where the law at issue provides for both civil and criminal enforcement mechanisms, to satisfy the least restrictive means test the governmental entity must demonstrate that the criminal option is the least restrictive option. See, e.g., State v. J.P., 907 So.2d 1101, 1119 (Fla. 2004) (holding that "the imposition of criminal sanctions” for curfew violations is not the least restrictive means to further local governmental entities’ compelling interests because ”[t]he same goals could be achieved by imposing a civil penalty”); Commonwealth v. Weston W., 455 Mass. 24, 913 N.E.2d 832, 846 (2009) (holding that the Commonwealth "failed to meet its burden” under the least restrictive means test "to show that the use of criminal penalties provides an increased benefit over ... civil enforcement mechanisms ... sufficient to offset their greater intrusion”). Here, in its probable cause affidavit the State asserted that the Department of Revenue mailed Tyms-Bey "a notice ... that he owed ... taxes,” but there is no evidence of any attempts at collection by the State prior to the filing of the instant criminal charges or any evidence that such attempts would have been ineffective. Appellant’s App. Vol. II at 15-16.

. Indiana Code Section 34-13-9-10 states that a RFRA determination is to be made by “a court or other tribunal in which a violation of this chapter is asserted....” That statute further provides that, if a RFRA violation is found, “the court or other tribunal shall allow a defense ... and shall grant appropriate relief....” I.C. § 34-13-9-10. That language suggests that the viability of a RFRA claim or defense generally is a question of law for the court or other tribunal "in which” the claim or defense is asserted and from which the claiming party can obtain "appropriate relief.” See id.

. Nothing in our rales of criminal or trial procedure prohibit the State from seeking dis-eovery regarding any potential RFRA defenses to avoid a.trial-day surprise.

. The federal RFRA expressly identifies Sherbert as applying an analysis consistent with that statute’s intended protection. 42 U.S.C. § 2000bb(b)(l).